JAMIE TAYLOR T/A TAYLOR'S AUTO SALES v. ROBERT A. JOHNSON T/A B.J.'S AUTO SALES AND THE NORTH RIVER INSURANCE COMPANY

No. 863DC604

(Filed 20 January 1987)

**Automobiles § 6.5— parties as joint venturers—no seller-purchaser relationship— no recovery on bond**

Parties who were engaged in a short-term business deal for joint profit with contributions of effort from each and risks taken by each were joint venturers rather than seller and purchaser so that plaintiff could not recover under a bond obtained in order to meet the requirements of N.C.G.S. § 20-288.

Taylor v. Johnson

APPEAL by plaintiff from *Rountree, Judge*. Judgment entered 16 January 1986 in PITT County District Court. Heard in the Court of Appeals 13 November 1986.

Plaintiff Jamie Taylor filed this action against defendants Robert Johnson and the North River Insurance Co., the company by which Johnson was bonded as a licensed automobile dealer. Plaintiff sought recovery of $6,108.07 for the amount given Johnson for a car, later confiscated by the police, and for repairs plaintiff performed. A default judgment was entered against defendant Johnson. The case against North River went to trial.

Plaintiff's evidence tended to show the following events and circumstances. At the time this cause of action arose, plaintiff owned and operated Taylor's Auto Sales and Evans Street Auto Service, a repair business. Defendant Johnson was a licensed automobile dealer doing business as B.J.'s Auto Sales. In 1983, Johnson began bringing used cars to Taylor's repair shop for minor repairs. Plaintiff and defendant also knew each other from automobile auctions which they had attended.

In early 1983, Johnson approached Taylor with an idea for a business arrangement. Taylor agreed to sign as a guaranty on a loan from First State Bank to defendant Johnson. The note was to be secured by the title to a 1982 Camaro, and the proceeds were to be used to purchase and repair a wrecked Blazer and a wrecked Cadillac. Taylor, whose shop was to do the repairs, would split with Johnson any profits made after the cars were sold and the loan repaid.

On 2 February 1983, plaintiff and defendant went to the First State Bank and arranged a loan for $9,500; plaintiff guaranteed payment of defendant's note and defendant gave the bank the title to the Camaro as collateral. Defendant soon sold the Camaro; he obtained the title from the bank and transferred it to the buyer. Defendant paid off part of the note with the proceeds. On 24 February, defendant and plaintiff obtained a second loan of $9,500 using the same procedure as before. Defendant paid off the first loan and bought the Blazer and Cadillac with the remainder; the bank held the titles. The Blazer was repaired and sold as planned, and defendant made a partial payment on the note with the proceeds.

On 21 April, defendant tried to obtain the title to the Cadillac by offering payment of $4,500 to the bank which would have left a balance of more than $1,000 unsecured except for plaintiff's guaranty. The bank refused and called plaintiff, demanding payment in full. On 28 April, plaintiff and defendant drove to the bank in the Cadillac; it was the first time plaintiff had seen the car. Inside the bank, plaintiff gave defendant a check for $5,623.54, the total amount due on the note. He, in turn, paid off the note and signed the title to the Cadillac over to the plaintiff. This transfer was notarized by a bank employee.

Now in possession of the Cadillac, plaintiff made minor repairs and lined up a potential buyer. However, on 6 May 1983, the Cadillac was discovered by Inspector W. E. Brinson to be stolen: the confidential vehicle numbers of the Cadillac were those of a car reported stolen and did not match those on its own dash or its title. Inspector Brinson seized the Cadillac and had warrants issued for the arrest of defendant Johnson. The whereabouts of Johnson were still unknown at the time of trial.

At the close of plaintiff's evidence, defendant North River Ins. Co. made a motion for a directed verdict. The trial court denied the motion but granted a directed verdict when defendants renewed the motion. Plaintiff appealed.

*James M. Roberts for plaintiff-appellant.*

*Battle, Winslow, Scott & Wiley, P.A., by Robert L. Spencer, for defendant-appellee.*

WELLS, Judge.

Plaintiff contends that the trial court erred in directing a verdict against him in his suit to recover on the bond. We disagree.

A directed verdict for the defendant will not be allowed unless "it appears as a matter of law that a recovery cannot be had by the plaintiff upon any view of the facts that the evidence reasonably tends to establish." *Koonce v. May*, 59 N.C. App. 633, 298 S.E. 2d 69 (1982). In reaching its decision, the trial court must consider the plaintiff's evidence in the light most favorable to the plaintiff and give the plaintiff the benefit of every reasonable inference to be drawn therefrom. *Id.*

The threshold issue is whether plaintiff is a member of the class of people whom the bond was designed to protect. The pertinent part of the bond stated that North River Ins. Co., as a surety, is bound

> to the people of the State of North Carolina to indemnify any person who may be aggrieved by fraud, fraudulent representation or violation by said Principal, salesmen, or representatives acting for such Principal within the scope of employment of such salesmen or representatives of any of the provisions of Article 12, Chapter 20 of the North Carolina General Statutes in the amount of $15,000 for each supplemental place of business, within this State at which motor vehicles are sold. . . .

This section is almost verbatim the language of a bond construed by this Court in *Triplett v. James*, 45 N.C. App. 96, 262 S.E. 2d 374, *disc. rev. denied*, 300 N.C. 202, 269 S.E. 2d 621 (1980). There, as in the case at bar, the bond referred on its face to Article 12, Chapter 20. The *Triplett* court reasoned that, although the contract purported to indemnify "any person" aggrieved by fraud, the bond was clearly obtained in order to meet the requirements of G.S. 20-288. That statute states in pertinent part:

> Any purchaser of a motor vehicle who shall have suffered any loss or damage by any act of a motor vehicle dealer that constitutes a violation of this Article shall have the right to institute an action to recover against . . . the surety.

The leading case concerning the definition of "purchaser" as expressed in G.S. § 20-288 is *Fink v. Stallings 601 Sales*, 64 N.C. App. 604, 307 S.E. 2d 829 (1983). In that case, Citicorp, a secured party with an interest in defendant's inventory of motor homes, sought to recover under defendant's surety bond when defendant sold a motor home but did not remit the amount owed to Citicorp. This Court noted that, "where words of a statute have not acquired a technical meaning, they must be construed in accordance with their common and ordinary meaning unless a different meaning is indicated." (Citations omitted):

> The common meaning of "purchaser," as defined in Webster's Third New International Dictionary (1968), is "one that acquires property for a consideration (as of money)." Although

Citicorp did have an interest in the 1979 motor home, it cannot be said that it *acquired* the vehicle. Citicorp never took possession of the motor home. It was never issued a certificate of title in its own name. Registration cards and license plates were never issued to Citicorp. All Citicorp had was a security interest. We hold that Citicorp is not a 'purchaser' under the common and ordinary meaning of the word, and is, therefore, not entitled to recover under G.S. § 20-288.

*Id.* Although, in the case at bar, the plaintiff's testimony indicated that he tendered money to Johnson and received the title in return, the relationship of the parties was primarily that of joint venturers rather than seller-purchaser: Taylor and Johnson engaged in a short-term business deal for joint profit, with contributions of effort from each and risks taken by each. *See Pike v. Trust Co.*, 274 N.C. 1, 161 S.E. 2d 453 (1968). As a joint venturer, Taylor is not a purchaser "under the ordinary meaning of the word" and therefore cannot recover on the bond secured to comply with G.S. § 20-288. Since our finding on this issue precludes recovery, we need not address plaintiff's other arguments. The order of the trial court is

Affirmed.

Judges BECTON and ORR concur.