**Alfred J. FERRIS, Plaintiff–Appellant,**

v.

**Dean HAYMORE; Lucille Inman, Defendants–Appellees, Western Surety Company, Defendant & Third Party Plaintiff–Appellee,**

**and**

**Carl Edward Simmons, d/b/a Simmons Auto Sales, individually; Clarence B. Inman, "Bill," t/a Inman Motors; Myrtle Inman; Dorothy M. Simmons, Defendants.**

**Alfred J. FERRIS, Plaintiff–Appellee,**

v.

**WESTERN SURETY COMPANY, Defendant & Third Party Plaintiff–Appellant,**

**and**

**Dean Haymore; Lucille Inman; Carl Edward Simmons, d/b/a Simmons Auto Sales, individually; Clarence B. Inman, "Bill," t/a Inman Motors; Myrtle Inman, Defendants,**

v.

**Dorothy M. SIMMONS, Third Party Defendant.**

Nos. 91–1412, 91–1420.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 28, 1991.

Decided June 9, 1992.

As Amended July 22, 1992.

---

**5.** Because we conclude that § 1818(i)(1) prevents application of the automatic stay, we need not reach, and express no opinion on, the OTS's alternative argument that the temporary order falls within the § 362(b)(4) and (5) exceptions to the automatic stay.

William Henry Shewmake, Coates & Davenport (Malcolm P. McConnell, Coates & Davenport, Anton J. Stelly, Thompson, Smithers, Newman & Wade, Richmond, Va., on the brief) for plaintiff-appellant.

William Watts Walker, Craige, Brawley, Liipfert & Ross, Winston–Salem, N.C., for defendants-appellees.

Before WIDENER and LUTTIG, Circuit Judges, and RESTANI, Judge, United States Court of International Trade, sitting by designation.

## OPINION

LUTTIG, Circuit Judge:

Alfred J. Ferris appeals and Western Surety Company crossappeals from a judgment of the United States District Court for the Middle District of North Carolina in an action arising out of the fraudulent rollback of an automobile odometer. Ferris, the purchaser of the automobile, appeals various rulings of the district court that reduced his recovery. Western cross-appeals the court's refusal to grant summary judgment in its favor and the court's failure to reduce the judgment against Western by amounts Ferris received in pretrial settlements. We affirm in part, reverse in part, and remand.

## I.

Alfred Ferris bought a 1980 Buick from a Richmond, Virginia, automobile dealer in November 1983 for $7,995, after having been assured by the dealer that the odometer was accurate. The odometer reflected that the automobile had previously been driven 33,393 miles. *See* J.A. at 402. In December 1983, after Ferris began experiencing costly mechanical problems with the car, he contacted the Virginia Division of Motor Vehicles (VDMV). *See id.* at 517. By letter dated January 21, 1985, VDMV informed Ferris that he might be a victim of odometer fraud. *Id.* at 493–94. A subsequent review of the automobile's title history showed that it had actually been driven 70,930 miles at the time that he purchased it. *See id.* at 393. The fair market value of the automobile at the time of his purchase was in fact only $4,850. *See id.* at 337.

Ferris sued the Richmond dealer from whom he had purchased the automobile in the United States District Court for the Eastern District of Virginia, and the dealer settled the suit with Ferris for $6,000. *Id.* at 497–99.

Ferris then brought an action in the United States District Court for the Middle District of North Carolina against Carl Simmons, Bill Inman, Dean Haymore, and Western Surety Company. *See id.* at 1219. He subsequently joined Lucille Inman as a fifth defendant. *See id.* at 23–31. Simmons, Lucille Inman, and Haymore owned and operated two dealerships in the automobile's chain of title; Western provided surety bonds to both dealerships. Before trial, default judgment was entered against Lucille Inman and Haymore for failure to respond to the complaint, *see id.* at 62–63, and Ferris settled with Simmons for $5,000 and voluntarily dismissed his claim against Bill Inman, *see id.* at 151, 287, 334–35.

The district court, by memorandum opinion on April 26, 1988, granted Western's motion to dismiss Ferris' direct claims against it under the federal and state odometer laws. *See id.* at 157. The court also granted Western's motion to dismiss Ferris' claim for treble or punitive damages

and attorney fees. *See id.* at 157–59. It denied motions for summary judgment on other issues filed by both parties. *See id.* at 161.

Following a bench trial in December 1988, the district court held that Haymore and Lucille Inman had violated the federal and state odometer laws. Based upon its finding that Ferris had suffered actual damages of $3,712.84, the court awarded Ferris treble damages of $11,138.52 under federal law, and additional treble damages of $11,138.52 under state law. The court then deducted from the resulting $22,-277.04 the $11,000 paid to Ferris in prior settlements and added $3,090.40 in prejudgment interest, which resulted in a total judgment of $14,317.44 against Haymore and Lucille Inman. *See id.* at 343–46. The court later ordered Haymore and Lucille Inman to pay Ferris $17,207.25 in costs and attorney fees. *See id.* at 358–59.

The court held that Western's liability should be limited to Ferris' actual damages. It therefore ordered Western to pay $3,712.84—plus 9.43 percent postjudgment interest. Western was not ordered to pay treble damages, costs, or attorney fees. *See id.*

From the district court's judgment, Ferris appealed, and Western cross-appealed.

## II.

We first address four claims by Western which, if we were to accept them, would entitle Western to complete relief from the district court's judgment. We reject each of these claims.

## A.

Western first argues that Ferris cannot recover against it as a matter of law because under the North Carolina suretyship statute, its "bond applies only to purchasers from Western's principal" and Ferris did not purchase the 1980 Buick from either Simmons or Haymore and Inman, Western's principals. Appellee's Br. at 9. Western contends that "the requirement that all North Carolina dealers have similar bonds" makes it "reasonable to assume

that [the suretyship statute] intended to provide bond protection only to persons who dealt directly with the dealer." *Id.* at 12.[1]

■ North Carolina's motor vehicle dealer suretyship statute provides a cause of action against both the dealer and surety to "[a]ny purchaser" of a motor vehicle who suffers loss or damage as a result of a dealer's violation of the state's odometer law. N.C.Gen.Stat. § 20–288(e).[2] Consistent with the plain language of the statute, North Carolina courts have refused relief to injured parties who did not "purchase" an illegally altered vehicle. *See Taylor v. Johnson,* 84 N.C.App. 116, 351 S.E.2d 831, 834 (1987) (joint venturer with dealer); *Fink v. Stallings 601 Sales, Inc.,* 64 N.C.App. 604, 307 S.E.2d 829, 831 (1983) (holder of a secured interest in a motor vehicle); *Triplett v. James,* 45 N.C.App. 96, 262 S.E.2d 374, 375–76 (wholesale seller to dealer), *review denied,* 300 N.C. 202, 269 S.E.2d 621 (1980); *cf. NCNB Nat'l Bank v. Western Sur. Co.,* 88 N.C.App. 705, 364 S.E.2d 675, 676–77 (1988) (holding that an assignee of a purchaser's choses in action may recover). No court, however, as Western concedes, *see* Appellee's Br. at 11, has ever defined "purchaser" so as to exclude a downstream purchaser who did not purchase his automobile directly from the surety's principal. Indeed, no court has ever held that any purchaser of a vehicle was without a cause of action under the statute. The North Carolina courts understandably have hewed closely to the plain language of section 20–288(e), which creates a cause of action against the dealer and surety for *any* purchaser, and we have neither authority nor reason to narrow the broad class of purchasers protected by the statute's plain language.[3] Accordingly, we decline to engraft onto section 20–288(e) what in effect would be a requirement of privity between dealer and complainant. *See* Appellant's Reply Br. at 6.

■ Western next argues that Ferris' 1980 Buick was not a "motor vehicle" within the meaning of the North Carolina suretyship statute. Appellee's Br. at 11–12. The North Carolina statute provides a cause of action only to the purchaser of a "motor vehicle," which is defined as "any motor propelled vehicle ... required to be registered under the laws of this State." N.C.Gen.Stat. § 20–286(10). Western would have us read this statutory definition to exclude vehicles purchased outside of North Carolina. We decline to interpret the statute in the restrictive manner urged by Western. The statute could not be clearer that it includes *all* motor propelled vehicles that are required to be registered in North Carolina. The 1980 Buick sold to Ferris was required to be registered under North Carolina law at least prior to or during the time when Haymore and Inman owned the vehicle, if not immediately following its sale to Ferris. Haymore and Inman could not otherwise "cause or permit" the vehicle "to be operated or moved upon a public highway" in North Carolina. *Id.* § 20–79(c). The Buick therefore was a "motor vehicle" within the meaning of N.C. Gen.Stat. § 20–286(10).

■ Western's final argument with respect to N.C.Gen.Stat. § 20–288(e) is that nonresidents of North Carolina such as Ferris are not entitled to sue on Western's bond with the automobile dealers because the bond's terms bind Western only "unto the people of the State of North Car-

---

1. North Carolina law requires that all dealers maintain a motor vehicle dealer surety bond in a principal amount of $15,000. *See* N.C.Gen. Stat. § 20–288(e).

2. Section 20–288(e) provides that "[a]ny purchaser of a motor vehicle who shall have suffered any loss or damage by any act of a motor vehicle dealer that constitutes a violation of this Article or Article 15 shall have the right to institute an action to recover against such motor dealer and the surety." *Id.* Article 15 of the North Carolina General Statutes comprises the North Carolina Vehicle Mileage Act, N.C.Gen. Stat. §§ 20–340 to –350.

3. We have rejected the "remote purchaser" theory in the context of the federal odometer statute. *Ryan v. Edwards,* 592 F.2d 756, 761 (4th Cir. 1979); *accord Tusa v. Omaha Auto Auction, Inc.,* 712 F.2d 1248, 1251 n. 2 (8th Cir.1983); *Utah ex rel. Wilkinson v. B & H Auto,* 701 F.Supp. 201, 204 (D.Utah 1988). *But cf. Williams v. Toyota of Jefferson, Inc.,* 655 F.Supp. 1081, 1088 (E.D.La.1987).

olina."[4] Appellee's Br. at 12. Western's contractual obligation may be only unto the people of North Carolina, but the scope of its obligation is defined by the state's suretyship statute and, to the extent not inconsistent with that statute, the terms of the bond itself.[5] Both the North Carolina statute and the bond unmistakably obligate Western to indemnify dealers on claims by residents and nonresidents. The statute creates a cause of action in favor of "any purchaser," which includes in-state and out-of-state purchasers, and the bond correspondingly obligates Western to "indemnify *any* person who may be aggrieved by fraud." J.A. at 434 (emphasis added). Neither the language of the statute nor that of the bond permits an interpretation that would confine the surety's obligation to in-state residents. *See Mawyer v. Lumbermens Mut. Cas. Co.*, 237 Va. 299, 377 S.E.2d 401, 403 (1989) (rejecting the argument that the North Carolina statute protects only residents of that state).

### B.

■ Western also argues that Ferris filed his action after the statute of limitations had expired. The district court denied Western's motion for summary judgment on this ground. The court held that the three-year period under N.C.Gen.Stat. § 1–52(1) began to run when Ferris discovered or through reasonable diligence could have discovered the violations of the odometer laws. *See* J.A. at 154–55. The court reasoned as follows:

Although suspicious, the plaintiff could not know for certain about the odometer rollback prior to the VDMV letter since the record does not indicate that he had personal access to the title history of the car. Any legal action prior to the VDMV findings would have been premature since his suit would have been based on suspicion and not fact.... [P]laintiff is not responsible for the time delay between his request for an investigation and the VDMV findings letter.

*Id.* at 155.

Western concedes that the three-year period under N.C.Gen.Stat. § 1–52(1) applies to Ferris' claim under section 20–288(e). *See Bernard v. Ohio Cas. Ins. Co.*, 79 N.C.App. 306, 339 S.E.2d 20, 21 (1986); Appellee's Br. at 13. Analyzing Ferris' claim against it as one in contract, however, *see* Appellee's Br. at 13, Western argues that the district court erred in holding that the three-year period began to run when the fraud was discovered or reasonably could have been discovered, instead of when the contract between Western and the dealers was breached as a result of the dealers' fraud.[6] The district court seemed to reason mistakenly from federal law in deciding when the limitations period began to run. *See* J.A. at 155.[7] Nonetheless, we believe that it ultimately applied the correct rule of law. The North Carolina Court of Appeals held in *Bernard* that the cause of action against a surety under a motor vehicle dealer surety bond arises at the time that the cause of action arises against the surety's principal. 339 S.E.2d at 22–23.

---

4. Western's surety bond to Haymore and Inman as owners of Inman Motors read as follows:
 Inman Motors ... as Principal and WESTERN SURETY COMPANY As Surety are duly authorized to do business within the State of North Carolina, as Surety, are held and firmly bound unto the people of the State of North Carolina to indemnify any person who may be aggrieved by fraud, fraudulent representation or violation by said Principal, salesmen, or representatives acting for such Principal within the scope of the employment of such salesmen or representatives of any of the provisions of Article 12, Chapter 20 of the North Carolina General Statutes in the amount of Fifteen Thousand Dollars ($15,000). J.A. at 434.

5. "A corporate surety bond ... shall be conditioned that the obligor will faithfully conform to

and abide by the provisions of [Articles 12 and 15] of Chapter 20 of the General Statutes of North Carolina." N.C.Gen.Stat. § 20–288(e).

6. North Carolina ordinarily enforces the common law rule that the limitations period on a contract action begins to run upon breach, not upon discovery of the breach by the aggrieved party. *See, e.g., Jewell v. Price*, 264 N.C. 459, 142 S.E.2d 1, 3–4 (1965); *Brantley v. Dunstan*, 10 N.C.App. 706, 179 S.E.2d 878, 880 (1971).

7. The court cited *Tye v. Spitzer–Dodge*, 499 F.Supp. 687 (S.D.Ohio 1980), and *Byrne v. Autohaus on Edens, Inc.*, 488 F.Supp. 276 (N.D.Ill. 1980), in support of its holding.

Therefore, under *Bernard,* Ferris' cause of action against Western arose when his cause of action against the dealers arose. Although Ferris' action against Haymore and Inman was predicated upon Western's contract with Haymore and Inman, it was an action sounding in fraud. *See* N.C.Gen. Stat. § 20–348(a) ("any person who, with intent to defraud, violates ... this article"); *McCracken v. Anderson Chevrolet–Olds, Inc.,* 82 N.C.App. 521, 346 S.E.2d 683, 686 (1986). North Carolina courts apply the so-called "discovery rule" in causes of action that sound in fraud. *See, e.g., Blankenship v. English,* 222 N.C. 91, 21 S.E.2d 891, 892 (1942); *Wimberly v. Washington Furniture Stores, Inc.,* 216 N.C. 732, 6 S.E.2d 512, 512 (1940).[8] In fact, the North Carolina Court of Appeals specifically stated in *Bernard* that a plaintiff's cause of action against a surety under N.C.Gen.Stat. § 20–288(e) begins to run when the fraud is discovered. *See* 339 S.E.2d at 23. Therefore, the district court correctly concluded that the statute of limitations for Ferris' claim against Western began to run at the time of Ferris' discovery of the fraud or when he reasonably could have discovered the fraud.[9] Even Western concedes that starting the statute to run any earlier would penalize Ferris before he had been affected by the fraud. *See* Appellee's Br. at 16 n. 2.

■ Western argues in the alternative that if the "discovery" rule applies, Ferris'

claim is nevertheless time-barred because he "knew in December 1983 that there was a high probability" the odometer was rolled back. *Id.* at 15. Western contends that the automobile's extensive repair record, *see* J.A. at 267–68, 277, and a highway patrolman's suggestion that Ferris was probably the victim of odometer fraud, *see id.* at 278, support such a finding as to Ferris' knowledge. *See* Appellee's Br. at 14–15. Like any other finding of fact, the district court's factual determination of when a plaintiff discovered a fraud or reasonably could have discovered a fraud will not be disturbed unless clearly erroneous. *See* Fed.R.Civ.P. 52(a). We are not prepared, based on the evidence recited by Western, to conclude that the district court clearly erred in finding that Ferris could not reasonably have discovered the odometer fraud until the VDMV notified him of the automobile's title history. It is not clear error, if error at all, to reason that Ferris could not have discovered the fraud until he at least had reason to believe that the fraud might have occurred and that the repair record and the patrolman's statement did not provide such reason.

For the reasons stated, we affirm the district court's denial of Western's motion for summary judgment.

### III.

Ferris challenges on appeal two district court rulings that reduced his recovery.

---

**8.** Violation of the federal odometer statute is also considered a fraudulent act, and federal courts have similarly held that the limitations period runs from the moment the plaintiff discovered or reasonably could have discovered the fraud. *See B & H Auto,* 701 F.Supp. at 203; *Tye,* 499 F.Supp. at 693 (citing *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946)); *Byrne,* 488 F.Supp. at 280; *Levine v. MacNeil,* 428 F.Supp. 675, 676 (D.Mass. 1977).

**9.** Western argues, on the authority of *Davis v. Adoption Auto, Inc.,* 731 F.Supp. 1475 (D.Kan. 1990), that the "discovery rule" in odometer cases requires that the statute of limitations begin to run "when a prudent person under the circumstances *would be led to further inquiry* regarding the possibility of odometer tampering." Appellee's Br. at 15 (quoting *Davis,* 731 F.Supp. at 1477 (emphasis added)). It is doubt-

ful that the court in *Davis,* or the court in the case upon which *Davis* relied, *see Jones v. Roy Stanley Chevrolet,* 666 F.Supp. 194, 196 (D.Mont. 1987), intended to articulate a rule different from the traditional "discovery rule" recited above at 9 & note 8. While the court in *Davis* did state, as Western notes, that "the test" is whether a prudent person would be led to further inquiry under the circumstances, two sentences earlier the court had framed the issue before it as "whether [the] plaintiff ... could reasonably have discovered the possibility of odometer fraud ... *so as to* begin the running" of the statute. *Davis,* 731 F.Supp. at 1477 (emphasis added); *see also Jones,* 666 F.Supp. at 196 (holding that the "[p]laintiff discovered or, in the exercise of reasonable diligence, could have discovered the violation of the odometer act"). Regardless, no North Carolina court has adopted the quoted language in lieu of the traditional discovery rule.

First, Ferris asserts that because Haymore and Inman are liable for treble damages, attorney fees, and court costs under the federal and state odometer statutes, Western, as their surety, is also liable for treble damages, attorney fees, and costs. Second, Ferris argues that the district court erred in reducing his judgment against Haymore and Inman by amounts already received in pretrial settlements with other defendants. We affirm the district court's decision not to hold Western liable for treble damages, fees, and costs. We affirm in part and reverse in part the district court's decision to permit recoupment against Ferris' judgment against Haymore and Inman.

### A.

The district court ordered Western to compensate Ferris only for "actual damages" suffered, which the court found to be $3,712.84. The court reasoned that Ferris' "actual damages" were his out-of-pocket repair costs plus the difference between the 1980 Buick's fair market value at the time of purchase and the purchase price. *See* J.A. at 343. The court did not hold Western liable for treble damages because it interpreted N.C.Gen.Stat. § 20–288(e) to allow for recovery of only actual, not punitive, damages. It did not order Western to pay Ferris' legal fees and costs because it concluded that neither Western's bond nor N.C.Gen.Stat. § 20–288(e) requires the losing party to pay the prevailing party's fees and costs. *See* J.A. at 157–59.

The North Carolina Supreme Court's decision in *Tomlinson v. Camel City Motors, Inc.,* 330 N.C. 76, 408 S.E.2d 853 (N.C.1991), which was decided after argument in this case was set but before argument was heard, controls whether Ferris is entitled under N.C.Gen.Stat. § 20–288(e) to treble damages, attorney fees, and costs from Western. In *Tomlinson,* the plaintiff, after prevailing on a default judgment against an automobile dealer for fraud in violation of North Carolina's unfair trade statute,[10] sought to enforce the judgment in full against the dealer's surety under N.C.Gen.Stat. § 20–288(e). The trial court granted summary judgment against the surety for treble damages and attorney fees, and the Court of Appeals affirmed. The North Carolina Supreme Court affirmed in part and reversed in part, holding that under N.C.Gen.Stat. § 20–288(e) the plaintiff was entitled to compensation from the surety only for damages actually "suffered":

> Under N.C.G.S. § 20–288(e), the damages allowable are those that are "suffered." In the present case, the dealer did not pay the plaintiff's monthly car payments as required by their agreement. The total of the unpaid payments ... was the amount "suffered" by the plaintiff. She did not "suffer" further compensatory damages. We hold that under N.C.G.S. § 20–288 the surety is not liable for the trebled portion of damages.

*Tomlinson,* 408 S.E.2d at 856 (citation omitted). The court reasoned that enforcing treble damages of an "exemplary and punitive" nature against the surety, who had no knowledge of the fraud, would not further the purpose of the treble damage statute, which was to deter fraudulent dealer conduct. *Id.* Thus, under the North Carolina Supreme Court's interpretation of section 20–288(e) in *Tomlinson,* the purchaser of an automobile is entitled to recover against a surety only to the extent of "loss or damage" actually "suffered" as a result of the fraudulent conduct by the surety's principal. The purchaser is not entitled to recover punitive treble damages. *See* discussion *infra* at 954–955.

Ferris contended at oral argument, in an effort to avoid the obvious effect of *Tomlinson* on his treble damages claim, that this is a circumstance in which "the insured consumer has lost a great deal more than the initial damages by spending extra money and time to gain a modicum of satisfaction," entitling him to treble damages under *Tomlinson.* Oral Argument (Oct. 28, 1991) (quoting *Tomlinson,* 408 S.E.2d at

---

10. Like the North Carolina odometer statute, the unfair trade statute at issue in *Tomlinson* entitled the plaintiff to treble damages, attorney fees, and court costs. *See* N.C.Gen.Stat. §§ 75–16 to –16.1.

856). The court in *Tomlinson* suggested that an award of some portion, if not all, of treble damages might be appropriate in the circumstance described in the quoted passage because "the consumer would have 'suffered' more than just the initial damages." *Tomlinson*, 408 S.E.2d at 856; *see* discussion *infra* at 954–955.

The plaintiff in *Tomlinson* did not claim damages beyond those initially incurred as a result of the fraud. *See* 408 S.E.2d at 856. Thus, the passage from *Tomlinson* on which Ferris relies is *obiter dictum* only. *See also id.* ("[T]rebling against the surety *may* be appropriate because the consumer would have 'suffered' more than just the initial damages." (emphasis added)). It is unlikely in any event that the North Carolina Supreme Court intended to suggest that a plaintiff necessarily would be entitled to the full amount of treble damages in the circumstance described in the recited passage. Such a proviso would negate the general rule, which the court had just articulated, that treble damages are not available against a surety under N.C.Gen.Stat. § 20–288(e). It appears that the court intended at most to suggest that a plaintiff might be entitled to recover a nonpunitive award *not to exceed the amount of treble damages* for certain losses that would not be considered "actual damages." The court specifically noted, for instance, that in the circumstance described, the treble portion of the award would be "transformed" from a "punitive to a compensatory award." *Tomlinson*, 408 S.E.2d at 856. Whatever losses the court intended to include, presumably it did not include the ordinary travel expenses associated with consulting counsel and attending court that Ferris seeks here.[11] Such ordinary expenses incident to the litigation of any matter are almost certainly

not the kind of "extra" costs that the North Carolina Supreme Court contemplated in its passing reference to expenses incurred "to gain a modicum of satisfaction."[12]

■ Under an application of *Tomlinson*, Ferris is therefore entitled to recover from Western $3,712.84, which represents the difference between the purchase price and the fair market value of the automobile, and the additional repair costs that Ferris incurred. He indisputably "suffered" damages in at least this amount, as the district court held. He is not entitled, however, to a punitive trebling of damages.

## B.

■ The question remains whether Ferris is entitled to recover attorney fees and court costs from Western. We believe that he is not. *Tomlinson* did not address whether the purchaser of an automobile could recover from his dealer's surety attorney fees and court costs incurred in pursuit of his fraud claim; the defendant in that case failed to preserve the issue for appeal. *See Tomlinson*, 408 S.E.2d at 856–57. We believe, however, that North Carolina courts would not allow plaintiffs to recover such fees and costs from a surety as "loss or damage" suffered. Costs and attorney fees are not damages, and whatever "loss" that these expenditures represent is not "suffered" as a direct result of the fraud committed by the surety's principal. The North Carolina legislature has not explicitly authorized plaintiffs to recover costs and attorney fees from sureties. In the absence of an expressed legislative intent or guidance from the North Carolina courts on the issue, we decline to impose

---

11. Apart from the cost of repairs and the loss in value of the automobile, the only other losses that Ferris claims to have "suffered" as a result of the fraud were his lost "time in traveling to Richmond on a couple of occasions to consult with an attorney, and having to come up here today [to trial] at a cost of seven or eight hundred dollars." J.A. at 287.

12. Nor, presumably, would such losses include the attorney fees and court costs that Ferris

seeks. North Carolina's odometer tampering statute specifically allows successful plaintiffs to recover "the costs of the action together with reasonable attorney fees." N.C.Gen.Stat. § 20–348(a)(2). Because the statute by terms provides for these expenses, it is unlikely that the North Carolina courts would interpret the treble damages portion of the statute to authorize an award for attorney fees and other costs associated with litigating the claim.

such liability on the sureties that issue bonds to North Carolina dealers.

We hold therefore that Ferris is not entitled under N.C.Gen.Stat. § 20–288(e) and the terms of Western's bonds to recover attorney fees and costs from Western.[13]

C.

The district court reduced Ferris' judgments against Haymore and Inman by the $11,000 Ferris received in pretrial settlements. *See* J.A. at 345. Ferris urges that we reinstate the full $22,277.04 treble damages award against those defendants. We conclude that Haymore and Inman were entitled to recoup only $2,500.

The district court held that Ferris was entitled to a total recovery from Haymore and Inman of $22,277.04, $11,138.52 as a result of their violation of the federal odometer statute and $11,138.52 as a result of their violation of the state odometer statute. *See* J.A. at 34243. The district court then deducted the $11,000 Ferris had received in pretrial settlements from the other defendants on the authority of *Duval v. Midwest Auto City, Inc.*, 425 F.Supp. 1381, 1384 (D.Neb.1977), *aff'd*, 578 F.2d 721 (8th Cir.1978). This resulted in a total award to Ferris of $14,317.44 after the addition of prejudgment interest. Because the judgment against Haymore and Inman was based in part on federal law and in part on state law, we must apply both federal and state law in determining whether the district court properly reduced Ferris' recovery. *See* Appellant's Reply Br. at 21 n. 7.

Ferris received $11,000 in settlement of his claims under the Federal Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1981–1991, and the North Car-olina Vehicle Mileage Act, N.C.Gen.Stat. §§ 20–340 to –350. It is clear that at least $6,000 of the $11,000 was in compromise of Ferris' federal claim. He received this amount from the Richmond automobile dealer "for damages sustained under the Motor Vehicle Information and Cost Savings Act, Title 15, United States Code, Section 1981 *et seq.*" J.A. at 497. He also received from Simmons $5,000 in settlement of both federal and state odometer claims. *See id.* at 151, 287, 334–35. The district court did not describe the details of the Simmons settlement. We assume, however, that the $5,000 represented $2,500 in settlement of the federal claim and $2,500 in settlement of the state claim. *Cf. id.* at 343 (stating that the Haymore–Inman judgment represents a payment for damages sustained under the federal odometer statute and an equal payment for damages sustained under the state odometer statute). Thus, Ferris in effect received $8,500 in settlement of his claim under federal law and $2,500 in settlement of a claim under state law.

We believe that the district court erred in reducing Ferris' judgment by the amount that he received from Haymore and Inman in compromise of his federal claim against them. The federal odometer statute does not mention or otherwise refer to recoupment. The statute, however, imposes treble damage liability on "*[a]ny* person who, with intent to defraud, violates any requirement imposed under this subchapter." 15 U.S.C. § 1989(a) (emphasis added).[14] In reliance upon the plain language and the remedial purpose of the statute, federal courts have held that odometer tampering defendants are separately liable under this statute and not entitled to assert cross-claims against each other for indemnity or

---

**13.** We need not address Ferris' argument that he is entitled to fees and costs beyond the face value of Western's bond, *see* Appellant's Br. at 18–19, given our holding that Ferris is not entitled to fees and costs from Western.

**14.** Subtitle IV of the Federal Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1981–1991, provides in relevant part:

(a) Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

*Id.* § 1989(a).

contribution. *See Charnetsky v. Gus Paulos Chevrolet, Inc.*, 754 F.Supp. 188, 190–91 (D.Utah 1991); *Mataya v. Behm Motors, Inc.*, 409 F.Supp. 65, 70 (E.D.Wis.1976); *Stier v. Park Pontiac, Inc.*, 391 F.Supp. 397, 401 (S.D.W.Va.1975); *cf. Alley v. Chrysler Credit Corp.*, 767 F.2d 138, 141–42 (5th Cir.1985) (holding, in reliance on *Mataya* and *Stier*, that separate issuers of allegedly false odometer statements were not "solidary obligors" and therefore that one joint tortfeasor was not entitled to benefit from a release of another joint tortfeasor). *But see Rice v. Gustavel*, 891 F.2d 594, 596–97 (6th Cir.1989); *Duval*, 425 F.Supp. at 1388; *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 739 P.2d 444, 453–54 (1987).[15] And one court has held on facts indistinguishable from those here that a defendant is not entitled to recoupment based on codefendants' settlements. *See Saber v. Dileo*, 723 F.Supp. 1167, 1168 (E.D.La.1989).

 This court has previously stated in *dicta* that a plaintiff under 15 U.S.C. § 1989 "may recover the statutory damages from *each* transferor in his chain of title." *Ryan v. Edwards*, 592 F.2d 756, 761–62 (4th Cir.1979) (emphasis added). But we have not otherwise had occasion to consider whether a right of recoupment exists under section 1989. Now that we are directly confronted with the question, we hold that section 1989 imposes separate and individual liability for treble damages on each defendant who violates its proscriptions and therefore that there is no right of recoupment under this section. We are not persuaded by the Sixth Circuit's contrary decision in *Rice v. Gustavel*. That court did not even purport to rest its decision that a plaintiff may not recover treble damages from each defendant found guilty of

violating the federal odometer statute on the terms of the statute. It simply stated that "[t]he fact that each such person shall be liable ... does not *necessarily* preclude the conclusion that liability is to be joint and several, rather than separate and individual." 891 F.2d at 596 (emphasis added). Then, without analysis, the court invoked the common law rule that "[l]iability for tortious conduct is normally joint and several" in holding that the federal odometer statute does not permit a plaintiff to recover the full measure of damages against each defendant. *Id.* at 597.

We do not believe that this holding can be reconciled with the plain terms of the odometer statute. The statute provides that "[a]ny person" who fraudulently violates its provisions "shall be liable" for "three times the amount of actual damages sustained or $1,500, whichever is the greater." 15 U.S.C. § 1989(a)(1). The statute thus not only provides to victims of odometer fraud a cause of action against each violator of the statute but also expressly provides that each violator will be liable for treble or statutory damages.

We also cannot agree with *Rice* that the common law principle of joint and several liability can be imported into a provision such as section 1989 (at least not where, as here, each fraudulent transfer was by a separate entity) because each fraudulent transfer of an automobile is a separate violation of the federal odometer statute. *See id.* § 1988; 49 C.F.R. § 580.5. Joint and several liability applies only where multiple defendants are responsible for a single tort, not where multiple defendants have each committed a separate tort. In any event, when Congress has intended to impose joint and several liability rather than separate and individual liability, it has

---

**15.** The Fifth Circuit characterized *Yowell v. Boyd Chevrolet, Inc.*, 504 F.Supp. 77 (W.D.Okla.1980), as permitting contribution among violators of the federal odometer statute because of that court's observation that codefendants under the federal act are "jointly and severally liable for the whole judgment to the plaintiff." *Alley*, 767 F.2d at 141 (quoting *Yowell*, 504 F.Supp. at 78); *see also Slaymaker*, 739 P.2d at 454. Although *Yowell* does cite *Duval* for the proposition that the statute imposes

"joint and several liability," *see Yowell*, 504 F.Supp. at 78, it ultimately concludes that the "phenomenon of separate and individual liability precludes recovery on a crossclaim based on indemnification or contribution" among joint tortfeasors, *id.* (quoting *Mataya*, 409 F.Supp. at 70), and it dismissed each defendant's crossclaim for indemnity. We therefore read *Yowell* as supporting the interpretation of the federal odometer statute that we adopt today.

so provided explicitly. *See, e.g.*, 12 U.S.C. § 2607(d)(2); 15 U.S.C. §§ 77k(f), 77*o*, 78t(a), 78t–1(c); I.R.C. § 5043(a)(3).

We reject also the argument advanced by our colleague that the recoupment rule under the odometer statute should be identical to the rule under the antitrust laws that a plaintiff's treble damages award must be diminished by any amounts received in settlement. Separate op., *infra*, at 960 n. 5. This argument fails to recognize the marked differences between the damages provisions of the antitrust laws and of the federal odometer statute. Whereas section 4 of the Clayton Act by terms limits an antitrust plaintiff to "recover threefold the damages *by him sustained*," 15 U.S.C. § 15 (emphasis added), the federal odometer statute does not limit a plaintiff's recovery by some factor of his actual damages. Indeed, the terms of the federal odometer statute expressly entitle a plaintiff to recover treble damages from each defendant found to have violated the statute. The rule that an antitrust plaintiff's award must be reduced by amounts received in settlement from co-conspirators, *see* separate op., *infra*, at 960 n. 5, simply has no bearing on the recoupment rule under the differently worded odometer statute.[16] The separate opinion also suggests that odometer fraud is adequately deterred and sufficient compensation provided through other enforcement provisions of the federal odometer statute. *See id.* at 958. Whether there is or is not adequate deterrence and compensation without permitting a plaintiff to recover multiple treble damages awards is irrelevant. Congress determined that the treble damages awards are necessary to achieve the degree of deterrence and compensation that it wished to exist, and we are without authority to adjust those levels of deterrence and compensation through application of common law or equitable principles.

Even if Congress' intent were less clear from the face of the statute than we believe it is, we would be reluctant to announce a different rule than we do today. Section 1989 is unmistakably punitive in character. Granting recoupment under the section to a guilty defendant would substantially dilute not only the section's punitive but also its deterrent force by spreading among several fraudulent parties what are in truth relatively small damages awards. Not only is there no evidence "that Congress was concerned with softening the blow on joint wrongdoers," *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981), which would justify a rule so at odds with the statute's punitive intent. There is affirmative evidence that Congress intended the full punitive force of the statute to be felt by every person who defrauds the public through deceptive odometer manipulation—joint wrongdoers no less so than others. "[J]udicial notions of fairness and equity must yield to the prophylactic policies of the treble-damage remedy." *Burlington Indus., Inc. v. Milliken & Co.*, 690 F.2d 380, 393 (4th Cir. 1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983).

Accordingly, we hold that the federal odometer statute, especially given its dual purposes of compensating defrauded purchasers and punishing tamperers, *see, e.g., Delay v. Hearn Ford*, 373 F.Supp. 791, 796 (D.S.C.1974), imposes separate and individual treble damages liability on each person who violates its proscriptions. The district court therefore erred insofar as it reduced Ferris' judgment by the $8,500 he received in settlement of his claims against

---

**16.** In any event, "the effect of a release upon" codefendants in antitrust actions "shall be determined in accordance with the intentions of the parties" to the release. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 345, 91 S.Ct. 795, 809, 28 L.Ed.2d 77 (1971); (*see also id.* at 347, 91 S.Ct. at 810 "The straightforward rule ... that a party releases only those other parties whom he intends to release.... is the appropriate rule for giving effect to releases under the antitrust laws...."). Neither settle-

ment in this case reflected an intention on Ferris' part to release any other parties from liability. *See* J.A. at 151, 334–35, 497–98. Indeed, Ferris' settlement with the Richmond dealer expressly stated that the dealer's release "does not ... release any other person, firm, entity or corpration from any claim or cause of action." *Id.* at 497; *cf. Burlington Indus., Inc. v. Milliken & Co.*, 690 F.2d 380, 394 n. 9 (4th Cir.1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983).

Haymore and Inman under the federal odometer statute.

■ As to the $2,500 payment in settlement of Ferris' state law claim against Simmons, we believe that North Carolina law would require that this amount be set off against Ferris' recovery. North Carolina recognizes the common law principle of "one recovery" for each injury, *see* N.C.Gen.Stat. § 1B–4(1); *Holland v. Southern Pub. Utils. Co.*, 208 N.C. 289, 180 S.E. 592, 593 (1935), even where the legislature has authorized damages that are punitive in character. *See Seafare Corp. v. Trenor Corp.*, 88 N.C.App. 404, 363 S.E.2d 643, 651–52, *review denied*, 322 N.C. 113, 367 S.E.2d 917 (1988). In *Seafare*, the North Carolina Court of Appeals reduced the plaintiff's judgment against the defendants by the settlement amount plaintiff had received from codefendants before trial, even though the unfair trade statute at issue entitled the plaintiff to treble damages from any person who violated the statute. *See* N.C.Gen.Stat. § 75–16. Thus, we conclude that the district court properly reduced Ferris' judgment against Haymore and Inman by the $2,500 he received from Simmons in settlement of Ferris' claim under North Carolina's odometer statute.

### IV.

■ On its cross-appeal, Western argues that it is entitled to a $11,000 reduction in its judgment as a result of Ferris' pretrial settlements. We disagree. Haymore and Inman were entitled to recoupment against Ferris' state-law judgment in the amount of Simmons' settlement because all three were potentially liable to Ferris on the same tort cause of action. Western, in contrast, is liable to Ferris in contract under N.C.Gen.Stat. § 20–288(e), a provision separate from the North Carolina odometer statute under which Simmons, Haymore, and Inman were sued by Ferris. North Carolina law limits the right to the reduction of a claim by amounts received in prior settlements to "two or more persons

liable in *tort* for the same injury or the same wrongful death." N.C.Gen.Stat. § 1B–4 (emphasis added); *cf. id.* § 1B–1(a) (limiting North Carolina's statutory right to contribution to "persons ... jointly or severally liable in *tort*" (emphasis added)). Because Western is liable to Ferris in *contract* under N.C.Gen.Stat. § 20–288(e) and its motor vehicle surety bond issued pursuant to that statute, Western is not entitled to recoupment based on its codefendants' settlements in *tort*. *See Duke Univ. v. St. Paul Mercury Ins. Co.*, 95 N.C.App. 663, 384 S.E.2d 36, 47 (1989); *Holland v. Edgerton*, 85 N.C.App. 567, 355 S.E.2d 514, 517 (1987). We hold therefore that the district court correctly declined to reduce Ferris' judgment against Western by any of the amounts Ferris received in pretrial settlements of his claims under the federal and state odometer statutes.

### CONCLUSION

For the reasons set forth, we affirm the district court's judgment against defendant Western. We reverse the district court's reduction of Ferris' judgment against defendants Haymore and Inman by the $8,500 that he received in settlement of his federal claim. We affirm the district court's reduction of Ferris' judgment against Haymore and Inman by the $2,500 that Ferris received in compromise of his state claim. The case is remanded for the entry of an appropriately modified judgment.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

WIDENER, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion save Part III C. I am of opinion that the Federal Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1981–1991 (the Act or the Odometer Act), allows automobile purchasers injured by odometer fraud only one statutory damage award. I would hold that well-established principles akin to recoupment [1] and that a man can collect only

---

1. Used in the sense of keeping back something which is due because of an equitable reason to

once for one injury apply fully under the Act, thereby ensuring that a plaintiff may collect only one full, trebled recovery. The majority's holding that each wrongdoing transferor in a car's chain of title is separately liable for full statutory damages will allow plaintiffs to reap recoveries many times in excess of their already-trebled actual damages. Because I find no basis in the Act or in the authorities for creating such a windfall, I respectfully dissent from the portion of Part III C. of the majority opinion addressing recovery under the Federal Act.

The majority opinion correctly notes that a majority of the district courts that have considered the issue, as well as the Fifth Circuit in *Alley*, have held that each guilty transferor is separately and independently liable for treble damages. However, I would agree with the result obtained by the Sixth Circuit, which has taken the view that the Act contemplates only one treble damage recovery per plaintiff.[2] In *Rice v. Gustavel*, 891 F.2d 594 (6th Cir.1989), the court considered an appeal by the plaintiff in a suit brought under the Act. The plaintiff, Rice, had purchased a used automobile whose odometer, it was later determined, had been fraudulently altered. Rice sued five defendants under the federal odometer statute, each of whom was a transferor in the car's chain of title. After a bench trial the district court found for Rice and awarded him treble damages in the amount of $11,797.23. The district court specified, however, that all five defendants were to be jointly and severally liable for only one trebled damage award. Rice then appealed, claiming that each defendant was separately liable for full statutory damages under the Act.

On appeal the Sixth Circuit affirmed. The court rejected Rice's argument that the words "[a]ny person" in 15 U.S.C. § 1989(a) require that the liability of each co-defendant be independent. Rather, the court opined,

> [b]y providing that "any person" shall be liable, the statute allows the purchaser to sue not only the immediate seller but any other persons in the chain of the title who may have been involved in the fraud. The fact that each such person shall be liable, however, does not necessarily preclude the conclusion that liability is to be joint and several, rather than separate and individual.

*Rice*, 891 F.2d at 596. Thus, the court went on to hold that the defendants were jointly and severally liable for Rice's single, trebled damage award.

The *Rice* court relied largely on the same authority as did the district court in the instant case, namely *Duval v. Midwest Auto City, Inc.*, 425 F.Supp. 1381 (D.Neb. 1977), affirmed, 578 F.2d 721 (8th Cir.1978). *Duval* also involved a suit under the Act by plaintiff purchasers of cars whose odometers had been illegally altered. Before trial commenced one plaintiff, Duval, settled with one defendant, Bennie Studna, in exchange for a $2,500.00 payment. Duval then proceeded to trial against the remaining defendants, against whom he ultimately obtained a judgment of $1,500.00.[3] The district court then deducted the amount received in settlement from Studna, $2,500.00, from the $1,500.00 damage award. Thus, the court held that Duval had already received full satisfaction of his damages under the Act and was entitled to

withhold it. See *Black's Law Dictionary* 1439 (4th ed. 1951). "At common law the term 'recoupment' described a claim that defendant could assert against plaintiff only if it arose from the same transaction as plaintiff's claim." See generally C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 1401 (1990); *First National Bank of Louisville v. Master Auto Service Corp.*, 693 F.2d 308, 310 n. 1 (4th Cir.1982).

**2.** The Supreme Court of Kansas likewise has interpreted the Act as providing for joint and

several, rather than separate and independent, liability among multiple defendants from a car's chain of title. See *Slaymaker v. Westgate State Bank*, 739 P.2d 444, 453–54 (Kan.1987). In addition, as I demonstrate below, the Eighth Circuit did not disapprove of this view by its affirmance of the *Duval* case.

**3.** Duval's actual damages were $247.00 which, even after trebling, were less than the statutory minimum award of $1,500.00. 15 U.S.C. § 1989(a)(1). Duval thus was awarded the $1,500.00 minimum.

no additional recovery from the remaining defendants save attorney's fees.

In explaining its application of traditional principles to damage awards under the Act, the district court in *Duval* rejected the view that imposition of separate and independent liability on each defendant in a car's chain of title is necessary to effectuate the policies behind the Act. I find persuasive the court's reasoning that those policies, to deter odometer tampering and compensate consumers harmed thereby, are sufficiently implemented by the extensive array of enforcement provisions contained throughout the Act. In addition to providing a private, federal cause of action for treble civil damages or a $1500.00 minimum damage award, the Act provides for: 1) recovery of costs and attorney's fees by successful plaintiffs, 15 U.S.C. § 1989(a)(2); 2) suits for injunctive relief against violators by the United States Attorney General, 15 U.S.C. § 1990; 3) suits by state authorities for injunctive relief or treble damages, 15 U.S.C. § 1990a; 4) criminal penalties for its violation, 15 U.S.C. § 1990c; and 5) inspections, investigations, and administrative proceedings by the Secretary of Transportation for enforcement of the Act, 15 U.S.C. §§ 1990d–1990f; see also *Duval*, 425 F.Supp. at 1388. In light of these further provisions of the Act, I am in agreement with the *Duval* district court's opinion that "[i]f the statute depended entirely or primarily upon the civil liability provision to deter incipient violators, or if the civil liability provision were not itself punitive, the argument for requiring each violator to pay without benefit of credit for payment by another would be stronger." 425 F.Supp. at 1388–89.[4]

My opinion that traditional principles akin to recoupment should apply under the Act is bolstered by the absence of any indication in the reported legislative history that a departure from the usual rule was contemplated. See S.Rep. No. 92–413, 92d Cong., 2d Sess., reprinted in 1972 U.S.C.C.A.N. 3960, 3962, 3970; Conf. Comm. Rep. No. 92–1476, 92d Cong., 2d Sess., reprinted in 1972 U.S.C.C.A.N. 3983. Without explicit direction to the contrary, I would not adopt a rule that would allow plaintiffs the possibility of recovering six, nine, twelve, or fifteen times the amount of their actual damages when the statute on its face authorizes only treble damages.[5]

**4.** I would note that the Eighth Circuit affirmed the district court's judgment in *Duval* by an opinion published at 578 F.2d 721 (8th Cir. 1978). It appears from that opinion that Duval did not challenge the district court's application of the recoupment principle against his judgment. The Eighth Circuit's opinion does, however, acknowledge the district court's holding, see 578 F.2d at 726, without comment, favorable or otherwise.

**5.** My opinion that the recoupment doctrine applies under the Odometer Act is bolstered by that doctrine's acceptance in the analogous area of the federal antitrust laws. In *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), a case brought under the Sherman and Clayton Acts, the Court stated that "[i]t is settled that, entirely apart from any release, a plaintiff who has recovered any item of damage from one coconspirator may not again recover the same item from another conspirator; the law, that is, does not permit a plaintiff to recover double payment." *Zenith Radio*, 401 U.S. at 348, 91 S.Ct. at 811; see also *Burlington Industries, Inc. v. Milliken & Co.*, 690 F.2d 380, 391 (4th Cir.1982) (diminution of antitrust plaintiff's award by amount of settlement payments received must occur after full award is trebled), cert. denied, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983); *Flintkote Co. v. Lysfjord*, 246 F.2d 368, 397–98 (9th Cir.) (same), cert. denied, 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957). Certainly the odometer statute does not occupy any higher place in the federal order of priorities than do the antitrust laws. Indeed, I suggest that the prevention of price fixing, monopoly, and such associated evils are of considerably more public consequence than the prevention of the sale of an automobile with false mileage upon its odometer. Thus, I do not believe that reason supports a construction of the odometer statute opposite to that which has been placed on the antitrust laws which also provide for treble damages.

I find unconvincing the majority's suggestion that the language of the Clayton Act negates any useful analogy between the rules governing damages under the antitrust laws and those governing damages under the Odometer Act. See *supra* at 957. Surely the Clayton Act's use of the words "damages by him sustained" would justify the decisions that the recoupment principle applies there. However, as I have already noted, I simply find no evidence, in the text of the Odometer Act, in the legislative history, or elsewhere, that Congress' mere use of the words "any person" was intended to have the extraordinary effect of overriding the rule that a plain-

Although simpler in terms, an equally valid and additional reason for the result I would obtain is the rule, both English and American, which prevents an injured party from recovering but once for one injury. See *Prosser & Keeton on Torts* § 48 (5th Ed. 1984). Again, as I have reasoned just above, absent explicit direction, no reason is given to depart from that rule.

Accordingly, I would affirm the judgment of the district court in all respects.

tiff should not recover multiple payments for the same injury.