Nos. 2--96--0656, 2--96--0664 cons.

                                                                  

          

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

                                                                  

            

LINDA MAJCHER,                  )  Appeal from the Circuit Court

                                )  of Du Page County.

     Plaintiff-Appellee and          )

     Cross-Appellant,                )

                                )

v.                              )  No. 91--L--2297

                                )

LAUREL MOTORS, INC.; ROBERT A.       )

LANGER and DIANA M. LANGER, Indiv.,       )

                                )

     Defendants-Appellants and       )

     Cross-Appellees                 )  Honorable

                                )  Edward R. Duncan, Jr.,

(Beverly Bank, Defendant-Appellee).       )  Judge, Presiding.

                                                                  

          

     JUSTICE INGLIS delivered the opinion of the court:

     The facts of this case arose when plaintiff, Linda Majcher,

purchased a car with a tampered odometer from defendant Laurel

Motors, Inc. (Laurel).  Plaintiff subsequently sued Laurel as well

as the previous owners, defendants Robert and Diana Langer

(Langers), and the financing institution, defendant Beverly Bank

(Bank).  Following a jury trial at which Laurel was found liable to

plaintiff for damages of $7,754.48 and attorney fees and costs of

$44,807.41, and the Langers were found liable to plaintiff for

damages of $12,000 and attorney fees and costs of $32,876.41,

Laurel and the Langers appealed.  Plaintiff cross-appealed from the

judgment of the trial court finding her contingent fee agreement to

be unlawful.  We affirm as modified.

                                BACKGROUND

     The facts of this case, as opposed to the multitudinous legal

arguments, are relatively straightforward.  In August 1989, the

Langers purchased a used Cadillac in Arizona for between $7,500 and

$8,000.  At the time of purchase, the odometer read over 80,000

miles.  The Langers testified that, as they drove their car back to

Illinois, they noticed that the odometer ticked and ran in reverse.

     On December 27, 1989, the Langers sold the car to Laurel for

$9,995 as a trade-in for the purchase of another vehicle.  The

Langers signed an odometer disclosure statement certifying that the

odometer reading of 35,011 miles was accurate.  Conflicting

testimony was presented on this point.  The Langers testified that

they told Laurel that the odometer had been rolling back during

their drive from Arizona; Laurel averred that it had no knowledge

of the low odometer reading.

     Plaintiff purchased the vehicle from Laurel on January 6,

1990.  At that time, Laurel signed another odometer disclosure

statement certifying that the odometer reading of 35,093 miles was

accurate.  Plaintiff purchased the car for a total of $10,197. 

Laurel assigned the approximately $7,500 loan to the Bank, and

plaintiff thereafter made her car payments to the Bank.

     After purchasing the car, plaintiff began to experience some

problems which were not covered by the warranty.  She investigated

the title history of the car and learned that the odometer had been

altered.  She then sued Laurel, the Langers, and the Bank, seeking

damages under a variety of theories.

     In counts I through VI of her amended complaint, plaintiff

sought damages from Laurel for breach of express and implied

warranty under the Magnusson-Moss Act (counts I and II), revocation

of acceptance of the contract (count III), consumer fraud (count

IV), common-law fraud (count V), and violation of the federal Motor

Vehicle Information and Cost Savings Act (15 U.S.C.A. §1981 et seq.

(West 1982)) (Federal Odometer Act) (count VI).  Plaintiff sought

damages from the Langers for violation of the Federal Odometer Act

(count VII) and common-law fraud (count VIII).  Finally, plaintiff

sought to revoke the retail installment agreement against the Bank

(count IX).  Laurel filed a third-party action against the Langers

under the Federal Odometer Act.  The Bank cross claimed against

Laurel, seeking revocation of the auto loan.  Plaintiff continued

to drive the car after this case was filed for another 39,500

miles.

     Approximately nine months before trial, Laurel offered to

settle the case for $10,000.  Plaintiff refused the offer.

     On November 4, 1994, after a jury trial, the following

verdicts were entered:  (1) a general verdict for plaintiff against

Laurel for $750; (2) verdicts for plaintiff against Robert Langer

for $6,000 based on statutory odometer fraud and $6,000 based on

common-law fraud; (3) verdicts for plaintiff against Diana Langer

for $6,000 based on statutory odometer fraud and $6,000 based on

common-law fraud; and (4) a verdict for Laurel against the Langers

for $6,000 based on statutory odometer fraud and $6,000 based on

common-law fraud.  Additionally, the court took plaintiff's

consumer fraud claim (count IV) under advisement.  The jury

assessed no punitive damages in this matter.

     On November 29, 1994, the trial court entered judgment for

plaintiff and against Laurel based on plaintiff's consumer fraud

claim, which rescinded plaintiff's purchase of the automobile and

awarded plaintiff $7,754.58 in damages.  The court further ordered

the Bank to return to plaintiff the $5,154.78 she had paid on the

auto loan and ordered Laurel to pay $9,483.93 to the Bank.  The

court also stated that if Laurel paid the amount to plaintiff, it

would be in satisfaction of the judgment for the Bank and against

Laurel.

     Laurel filed a notice of appeal, but we dismissed the appeal

on September 13, 1995, as premature because issues regarding

attorney fees had not been settled in the trial court.  Those

issues were settled on January 18, 1996, when the trial court found

that plaintiff's contingent fee agreement with her attorneys was

unethical and violated the rules of professional conduct. 

Nevertheless, the court awarded plaintiff nearly $45,000 in

attorney fees and costs against Laurel and nearly $33,000 in

attorney fees and costs against the Langers pursuant to statute. 

Defendants' timely appeals followed.

                                 ANALYSIS

     Nonpublishable material omitted under Supreme Court Rule 23.

I.  Laurel Appeal

     Turning to the merits of the various appeals, we will first

consider the issues raised by Laurel on appeal.  Laurel raises, in

essence, five issues on appeal:  (1) whether the doctrine of

election of remedies operates to void the judgment under the

Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud

Act) (815 ILCS 505/1 et seq. (West 1994)); (2) whether Laurel could

be restored to its position status quo ante by rescinding the

contract; (3) whether plaintiff will receive duplicative

rescissionary damages; (4) whether the judgment in favor of Laurel

and against the Langers should be modified to award Laurel its

total damages; and (5) whether attorney fees were properly awarded

to plaintiff.

     A.  Election of Remedies

     In its first issue on appeal, Laurel argues that the judgment

under the Consumer Fraud Act (815 ILCS 505/1 et seq. (West 1994))

should be vacated under the election of remedies doctrine because

plaintiff elected to receive actual damages under her common-law

fraud claims.  According to Laurel, plaintiff's choice to enter

judgment on her fraud claims represents an affirmance of the

contract which bars plaintiff from accepting rescissionary damages

later.  Laurel believes that the judgment on plaintiff's fraud

claims entered on November 4, 1994, is separate from the judgment

on plaintiff's Consumer Fraud Act claims entered on November 29,

1994.  Laurel further contends that the November 4 judgment

represents actual damages in affirmance of the contract and that

the November 29 judgment represents rescissionary damages in

disaffirmance of the contract.  Accordingly, Laurel contends that

the election of remedies doctrine bars plaintiff from collecting

damages on both judgments.  While we acknowledge that plaintiff may

not receive a double recovery, we disagree with Laurel's

contentions.

     We first provide an overview of the doctrine of election of

remedies.

          "The doctrine of election of remedies is applicable where

     a party has elected inconsistent remedies for the same injury

     or cause of action.  [Citations.]  The prosecution of one

     remedial right to judgment or decree constitutes an election

     barring subsequent prosecution of inconsistent remedial

     rights.  [Citations.]  For instance, a remedy based on the

     affirmance of a contract (e.g., damages) is generally

     inconsistent with one based on the disaffirmance of the

     contract (e.g., rescission).  [Citations.]  Thus, the election

     of either remedy is an abandonment of the other."  Lempa v.

     Finkel, 278 Ill. App. 3d 417, 423-24 (1996).

Laurel's argument, that the order of November 29, 1994, represents

a separate and subsequent action to the order of November 4, 1994,

simply misses the mark.

     The order of November 4, 1994, stated that the trial court

took "the cause of action brought by [plaintiff] against [Laurel]

pursuant to the Illinois Consumer Fraud Act" under advisement.  The

November 29, 1994, order renders the trial court's judgment arising

from the trial which concluded on November 4, 1994.  The November

29, 1994, order does not, therefore, represent a "subsequent

prosecution of inconsistent remedial rights"  (Lempa, 278 Ill. App.

3d at 424); rather, the order is simply the final resolution of the

combined bench and jury trial begun earlier.  Thus, there is no

subsequent prosecution of an inconsistent remedial right. 

Accordingly, for this reason, the doctrine of election of remedies

is not applicable to the case before us.

     The cases relied upon by Laurel are distinguishable.  Laurel

offers Lempa as the latest case stating the well-settled

proposition that the "prosecution of one remedial right to judgment

or decree constitutes an election barring subsequent prosecution of

inconsistent remedial rights."  Lempa, 278 Ill. App. 3d at 424. 

While this is an accurate statement of the law, the particular

facts of Lempa do not provide support for its application to the

facts of our case.  In Lempa, a previous action rescinded a

building lease between the parties.  Four months later another

action was instituted in which the former leaseholder sought to

recover damages for breach of the lease.  Lempa, 278 Ill. App. 3d

at 421.  The court concluded that the action sought relief based on

the breach of the rescinded lease and that the damages were

compensatory not rescissionary.  The second action was therefore

precluded by the doctrine of election of remedies.  Lempa, 278 Ill.

App. 3d at 427.  Here, there is no "subsequent prosecution" of an

inconsistent action, nor is there a prior award of inconsistent

damages.  Thus, Lempa, and its progenitors, are inapposite.

     Laurel next asserts that the general verdict for $750 and the

verdicts against the Langers are damages in affirmance of the

contract and that the consumer fraud verdict for $7,754.48 is for

rescissionary damages.  According to Laurel, these are inconsistent

and barred by the election of remedies doctrine.  We disagree.

     Plaintiff asserts that she sought rescission of the contract

in all of the counts of her amended complaint.  While not strictly

true, we note that the $750 verdict was a general verdict covering

plaintiff's fraud, revocation, and implied warranty claims.  "The

return of a general verdict creates a presumption that all issues

of fact upon which proof was offered were found in favor of the

prevailing party."  Klingler Farms, Inc. v. Effingham Equity, Inc.,

171 Ill. App. 3d 567, 572 (1988).  We cannot say that the jury

rejected one or more of plaintiff's claims in rendering its general

verdict.  Moreover, we are unpersuaded by Laurel's analysis that

the amount of the general verdict is unrelated to the damages for

revocation of acceptance as the amount of the verdict is within the

discretion of the jury.  Urban v. Zeigler, 261 Ill. App. 3d 1099,

1102 (1994).  Additionally, we note that no challenge to the

propriety of the amount of the general verdict has been raised.  

     Laurel's resort to the verdict against the Langers is

similarly unpersuasive.  The jury found the Langers liable for

$6,000 on plaintiff's common-law fraud claim.  The amount of a

verdict is within the jury's discretion, and we will not indulge in

speculation about the jury's intent in choosing this amount. 

Accordingly, we cannot say that the verdicts in this case are

inconsistent.

     B.  Status Quo

     Laurel's second issue on appeal is that the rescission of the

purchase contract failed to restore it to the position it occupied

before the contract.  Specifically, Laurel contends that it was

entitled to the car if it had to refund plaintiff's purchase price. 

Laurel asserts, however, that plaintiff continued to drive the car

until it was worthless, and the return of the car cannot restore it

to its position before the contract.  Laurel thus argues that it is

entitled either to vacate the rescission award or to modify it to

reflect the benefit plaintiff derived from her continued use of the

car.

     The remedy of rescission requires the cancellation of the

contract and the restoration of the parties to their status before

contracting.  Felde v. Chrysler Credit Corp., 219 Ill. App. 3d 530,

542 (1991).  Not only must any consideration or property received

by the rescinding party be returned, but the rescinding party must

also account for any benefits it received from the other party

under the contract.  Puskar v. Hughes, 179 Ill. App. 3d 522, 528

(1989).

     Laurel's argument boils down to a contention that it is due a

setoff for the benefit plaintiff derived from driving the car

nearly 39,500 miles after she purchased it.  Laurel contends that,

while it had to return plaintiff's payments on the car, the trial

court erred by failing to award it a setoff for the benefit

plaintiff enjoyed from driving the car.  We disagree.

     The trial court specifically found that "[t]here was no proof

as to the value of the mileage driven."  Indeed, plaintiff

testified that the car ran terribly from the time she purchased it,

was unsafe, and was frequently in need of repair.  From this

testimony, the trial court could reasonably conclude that the value

to plaintiff was negligible.  Accordingly, we find no abuse of

discretion in the trial court's decision not to award a setoff.  

     Laurel asserts that the value of the benefit to plaintiff was

the 19 payments she made on the contract.  Laurel argues that,

during the period in which plaintiff continued to drive the car,

she continued to make payments, discontinuing the payments in

October 1991, when the car stopped running.  Accordingly, Laurel

contends that its damages should be reduced by the value of those

19 payments, or $4,897.06.  Again, we disagree.

     Rescission was granted under plaintiff's statutory consumer

fraud action.  This action was tried to the court in a bench trial

proceeding simultaneously with the jury trial.  Accordingly, the

trial court was the finder of fact.  In deciding what value to

attach to the mileage, the trial court could accept plaintiff's

testimony about how the car performed and her aggravation and

inconvenience.  Additionally, the court noted that there was no

testimony offered concerning the value of the mileage.  The court's

decision not to award a setoff is not against the manifest weight

of the evidence and accordingly will not be disturbed on review.

     C.  Duplication of Damages

     Laurel's next issue on appeal is whether the trial court has

awarded plaintiff duplicative damages.  Laurel argues that the

damages awards, specifically the rescissionary awards, must be

modified to avoid giving a windfall to plaintiff.

     On November 29, 1994, the trial court entered a series of

judgments.  It first entered a judgment for plaintiff and against

Laurel in the amount of $7,754.48, representing a down payment of

$2,600 made to Laurel and payments of $5,154.48 made by plaintiff

to the Bank.  The trial court also entered judgment for plaintiff

against the Bank in the amount of $5,154.48, representing the

payments plaintiff made to the Bank on her car loan.  Additionally,

the trial court's order provided that Laurel's satisfaction of the

judgment it owed to plaintiff would satisfy the judgment of

plaintiff against the Bank.  The trial court also entered a

judgment for the Bank against Laurel, pursuant to an agreement

between the Bank and Laurel, in the amount of $9,483.93,

representing the $5,154.48 plaintiff paid to the Bank and the

$4,329.45 remaining outstanding on plaintiff's auto loan.

     Laurel argues that the judgment orders of November 29, 1994,

entitle plaintiff to receive only $7,754.48 in rescissionary

damages.  We agree.  Laurel also asserts that it should not have to

pay plaintiff $5,154.48 of the judgment against it because the Bank

has already satisfied that portion of the judgment.  We agree.  All

parties stipulated at oral argument that the Bank had satisfied the

$5,154.48 judgment against it in favor of plaintiff.  Thus, Laurel

is entitled to a setoff for that amount and need pay plaintiff only

$2,600 in order to satisfy plaintiff's judgment against Laurel.

     Laurel also appears to contend that it should not be liable

for the judgment entered in favor of the Bank and against Laurel. 

We disagree.

     The Bank's judgment against Laurel was the product of an

agreement between the Bank and Laurel.  Such an agreed order is

"conclusive on the parties and can be amended or set aside by one

of the parties only upon a showing that the order resulted from

fraudulent misrepresentation, coercion, incompetence of one of the

parties, gross disparity in the position or capacity of the

parties, or newly discovered evidence."  In re Haber, 99 Ill. App.

3d 306, 309 (1981).  Laurel has raised no objection to the agreed

judgment order between it and the Bank below, nor does it raise any

of the above-enumerated grounds on appeal.  Accordingly, we will

not disturb the judgment of the trial court.  Thus, Laurel is to

satisfy plaintiff's judgment for rescission, and Laurel must honor

its agreement to indemnify the Bank for the funds of the auto loan

it had contracted to receive.

     Nonpublishable material omitted under Supreme Court Rule 23.

     E.  Attorney Fees

     Laurel's final issue on appeal is whether the trial court

properly awarded attorney fees.  At the outset, we note that

Laurel's argument is directed solely toward the award of attorney

fees to plaintiff.  Additionally, Laurel made no objection to the

award of attorney fees to the Bank before the trial court. 

Accordingly, we deem this issue waived with respect to the Bank.

     Laurel initially argues that the trial court abused its

discretion by awarding attorney fees to plaintiff.  Section 10a(c)

of the Consumer Fraud Act provides that the trial court may award

attorney fees to the prevailing party.  815 ILCS 505/10a(c) (West

1994)  The decision whether attorney fees should be awarded to the

prevailing party rests within the sound discretion of the trial

court.  Ciampi v. Ogden Chrysler Plymouth, Inc., 262 Ill. App. 3d

94, 114 (1994).  Among the factors the trial court will consider in

deciding whether to award attorney fees are the degree of the

opposing party's bad faith; the opposing party's ability to satisfy

the fee award; the deterrent value of a fee award; whether the

party requesting fees sought to benefit all consumers or businesses

or to resolve a significant legal issue under the Consumer Fraud

Act; and the relative merits of the parties' positions.  Graunke v.

Elmhurst Chrysler Plymouth Volvo, Inc., 247 Ill. App. 3d 1015,

1022-23 (1993).

     Laurel claims that it did not act in bad faith in selling

plaintiff a vehicle with a tampered odometer.  Laurel further

blames the Langers for defrauding it, contending its reliance on

the Langers' representations was reasonable and justifiable. 

Because bad faith is often a controlling factor in the

determination to award attorney fees (see Graunke, 247 Ill. App. 3d

at 1023), according to Laurel, its lack of bad faith should have

precluded an award of attorney fees to plaintiff.  Laurel also

argues that "innocently misrepresent[ing] the odometer reading" can

never be deterred by awarding attorney fees and that all the other

Graunke factors are either not present or in Laurel's favor. 

Laurel's claim has no merit.

     Contrary to Laurel's representations, the trial court found

that plaintiff had presented credible evidence "that the digits on

the odometer were not properly aligned and the car showed a great

deal of wear" leading to the conclusion that "a reasonable

inspection by Laurel *** should have alerted it to the

malfunctioning odometer."  Or, in other words, Laurel essentially

closed its eyes to the true condition of the car in making its

statements to plaintiff regarding the mileage of the car.  We fail

to see how Laurel can possibly characterize its actions as being in

"good faith."  Additionally, the court specifically noted that

"since odometer fraud is a recurring problem within this country,

hopefully the award of attorney[] fees will deter such conduct in

the future."  Thus, we find no abuse of discretion in the court's

findings under Graunke.

     Even if Laurel's actions can somehow be said to have been

conducted with good faith, the Consumer Fraud Act does not require

bad faith as a prerequisite to an award of attorney fees.  Grove v.

Huffman, 262 Ill. App. 3d 531, 539 (1994) ("Section 10a(c) of the

Act applies to cases involving innocent misrepresentations");

Haskell v. Blumthal, 204 Ill. App. 3d 596, 602 (1990) ("attorney

fees may, at times, be awarded plaintiffs without bad faith on the

part of defendants").  We hold, therefore, that the trial court did

not abuse its discretion in awarding plaintiff attorney fees.

     Laurel next contends that the contingent fee agreement

executed between plaintiff and her counsel was unethical and,

therefore, should preclude the award of attorney fees to plaintiff. 

Laurel fails, however, to provide any authority to support its

argument, in violation of Supreme Court Rule 341(e)(7) (155 Ill. 2d

R. 341(e)(7)).  "Arguments made without citation of supporting

authority are deemed waived on appeal.  [Citation.]  The party who

thus waives the question is bound by his waiver, but the court,

which has the responsibility of reaching a just decision, is not so

bound."  In re Marriage of Winters, 160 Ill. App. 3d 277, 281

(1987).  Accordingly, we address this issue.

     Laurel contends that the trial court's ruling that plaintiff's

fee agreement with her counsel created a proprietary interest in

the lawsuit in violation of Rule 1.8 of the Rules of Professional

Conduct (134 Ill. 2d R. 1.8) should preclude the award of attorney

fees because of the conflict of interest such a fee agreement

causes.  We note that we do not reach the issue of whether the fee

agreement creates a proprietary interest in the litigation as the

attorney fees were properly allowed even if there is a proprietary

interest.  We agree with the trial court that the defendants were

not "the intended beneficiaries of Rule 1.8."  See Topps v. Pratt

& Callis, P.C., 206 Ill. App. 3d 298, 301 (1990) (harm from

unethical agreement was "to the administration of justice and

society at large because of the breach of the Code of Professional

Responsibility").  Moreover, the infirmities of the fee agreement

are more properly resolved by an action between plaintiff and her

counsel and are not the concern of Laurel.

     We also note that Laurel, as well as plaintiff in responding

to Laurel's argument, have properly placed the fee agreement before

us for consideration.  The agreement states, in part:

          "The Undersigned Client agrees to pay said attorneys a

     sum equal to 33 % (percent) of all amounts collected or

     otherwise recovered.  ***  It is also agreed that any

     attorneys [sic] fees awarded by the Court against the

     defendant, are in addition to the fees payable by client, and

     are outside this contact and will go directly to [counsel]."

The above-quoted clauses of the fee agreement are mutually

exclusive.  Plaintiff's counsel cannot collect both its contingent

fee as well as an hourly fee.  To do so would be to collect a

double payment--something which this court, and the Rules of

Professional Conduct, will not countenance.

     Additionally, we note that plaintiff's counsel applied for,

and received, statutory attorney fees at a reasonable hourly rate

(which presumptively includes a reasonable profit margin) that

fully compensates counsel for the time spent on the resolution of

this matter.  The purpose of the statutory fee award is to benefit

the plaintiff by allowing the plaintiff to obtain counsel in order

to pursue redress for relatively small claims.  In light of that

purpose, we will not allow counsel to collect the contingent fee as

well as its reasonable hourly fee because this would work to the

detriment of the plaintiff.  Accordingly, we hold that under the

fee agreement plaintiff's counsel is entitled to the statutory

attorney fees awarded by the trial court and no more.  Plaintiff is

entitled to the full amount of the judgments entered in her favor.

     Laurel's final contention is that its settlement offer should

act to limit the amount of attorney fees which may be awarded. 

Laurel argues that it offered plaintiff $10,000 to settle the case

on January 28, 1994, which was later rejected by plaintiff.  Laurel

asserts that plaintiff's judgment was less than the settlement

offer, prompting Laurel to conclude that any award of attorney fees

must be limited to those fees incurred before January 28, 1994, the

date of its settlement offer.  The trial court rejected Laurel's

argument, holding that the word "judgment" in the Consumer Fraud

Act (815 ILCS 505/10a(f) (West 1994)) must "include the monetary

amount of costs and attorney[] fees awarded."  We agree with the

trial court.

     The fee-shifting portion of the Consumer Fraud Act provides,

in pertinent part:

          "At any time more than 30 days before the commencement of

     trial, a party, who is a new vehicle dealer or used vehicle

     dealer *** and who is defending a claim under this Act, may

     serve upon the party seeking relief under this Act an offer to

     allow judgment to be taken against the defending party to the

     effect specified in the offer with costs then accrued.  *** 

     When a party seeking relief under this Act does not accept an

     offer *** and when that party fails to obtain a judgment in an

     amount more than the total offer of settlement, that party

     shall forfeit and the court may not award any compensation for

     attorney's fees and costs incurred after the date of the

     offer."  815 ILCS 505/10a(f) (West 1994).

     Laurel contends that "[s]tatutes in derogation of the common

law prohibition of attorney-fee awards to prevailing parties must

be strictly construed."  Greenview AG Center, Inc. v. Yetter

Manufacturing Co., 246 Ill. App. 3d 132, 140 (1993).  Thus,

according to Laurel, interpreting the word "judgment" to include

attorney fees would violate this rule.  Accordingly, Laurel

believes that attorney fees cannot be included in order to

determine whether a judgment exceeds a settlement offer.

     Laurel overlooks the fact that the legislature has mandated

that the Consumer Fraud Act "shall be liberally construed to effect

the purposes thereof."  815 ILCS 505/11a (West 1994).  "[O]ne of

the purposes of allowing attorney fees to be awarded under section

10a(c) [of the Consumer Fraud Act] to prevailing parties is to

encourage consumers to bring actions to vindicate their rights

under the Act.  [Citation.]  Without such a provision, it would be

difficult for injured consumers to obtain counsel in light of the

sums of money that are in dispute in most consumer fraud

litigation."  Totz v. Continental Du Page Acura, 236 Ill. App. 3d

891, 910 (1992).

     We must, therefore, construe the term "judgment" to include

attorney fees.  This conclusion is further bolstered by the fact

that the judgment in this case was not final until the petition for

attorney fees had been ruled upon.  Cf. Cashmore v. Builders

Square, Inc., 207 Ill. App. 3d 267 (1990) (order dismissing

complaint with prejudice not final and appealable until ruling on

timely filed petition for sanctions is made).  Accordingly, we do

not find that the court abused its discretion in determining the

amount of the fee award.

II.  Langer Appeal

     We next consider the issues raised by the Langers on appeal. 

The Langers raise six issues on appeal:  (1) whether the trial

court erred by granting plaintiff summary judgment on her Federal

Odometer Act count; (2) whether the jury was properly instructed

about the burden of proof and measure of damages for plaintiff's

common-law fraud count; (3) whether damages under the Federal

Odometer Act should have been joint and several and not individual

to the Langers; (4) whether the common-law fraud damages should

have been remitted to $2,000; (5) whether the damages on Laurel's

counterclaim should have been remitted to $750; and (6) whether

plaintiff should have been awarded attorney fees.

     A.  Summary Judgment

     In their first issue on appeal, the Langers contend that the

trial court erroneously granted summary judgment in favor of

plaintiff on the issue of liability under the Federal Odometer Act. 

The Langers assert that there was a genuine issue of material fact

concerning the issue of their intent to defraud.  They argue that

the fact that they submitted to the Illinois Secretary of State an

Arizona title indicating that the odometer reading of the car may

not have been accurate undercuts the trial court's conclusion that

they intended to defraud under the Federal Odometer Act.  We

disagree.

     Summary judgment is properly granted if the pleadings,

depositions, and admissions on file, together with any affidavits,

show there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law.  735 ILCS

5/2--1005(c) (West 1994); Leschinski v. Forest City Steel Erectors,

243 Ill. App. 3d 124, 127 (1993).  In ruling on the motion, the

court is required to construe all evidentiary material strictly

against the movant and liberally in favor of the respondent. 

Pagano v. Occidental Chemical Corp., 257 Ill. App. 3d 905, 908

(1994).

     The propriety of an order granting summary judgment is a

question of law, and, as such, we review such orders de novo. 

Pagano, 257 Ill. App. 3d at 909.  If, after reviewing the pleadings

and evidentiary material before the trial court, the reviewing

court determines that a material issue of fact exists or that the

summary judgment was based on an erroneous interpretation of the

law, then reversal is warranted.  Pagano, 257 Ill. App. 3d at 909.

     Our review of the evidence that existed at the time the motion

for summary judgment was pending convinces us that the trial court

correctly granted summary judgment.  The Federal Odometer Act

imposes liability on "[a]ny person who, with intent to defraud,

violates any requirement" of the statute.  15 U.S.C.A. §1989(a)

(West 1982).  The transferor's intent to defraud "may be inferred

from a showing of gross negligence or of a reckless disregard of

facts indicating the vehicle's odometer is incorrect."  Hall v.

Riverside Lincoln Mercury--Sales, Inc., 148 Ill. App. 3d 715, 720

(1986).

     It is undisputed that the Langers knew that the odometer

reading was in error.  It is likewise undisputed that the Langers

transferred their Illinois title to Laurel, signing the odometer

certification which listed the odometer reading at 35,011.  The

Langers did not indicate that the reading might have been

inaccurate in the space provided.  From these facts, the trial

court properly concluded that the Langers, at best, recklessly

disregarded the erroneous odometer reading in certifying its

accuracy.  We hold, therefore, that the trial court properly

granted summary judgment on the odometer fraud count.

     The Langers contend that Walt Bennett Ford, Inc. v. Goyne, 969

F.2d 603 (8th Cir. 1992), undercuts the trial court's finding of

intent under the odometer fraud count.  There, the court held that

the dealer, Walt Bennett Ford, was equitably estopped from

prosecuting an odometer fraud action because the seller had

disclosed that the odometer reading was not accurate and thus

lacked the requisite intent to defraud.  Walt Bennett Ford, 969

F.2d at 604-05.  Similarly, the Langers assert that their

disclosure of the inaccuracy of the odometer to Laurel, as well as

the Secretary of State, indicates that they did not possess the

intent to defraud under the statute.  We remain unpersuaded. 

Whether the Langers may have questioned the accuracy of the

odometer statement to Laurel does not contradict the fact that the

Langers certified the odometer reading to be 35,011 when they

assigned their title to Laurel and did not indicate that the

odometer reading was inaccurate.  Walt Bennett Ford is simply

inapposite to the facts of this case.  Accordingly, summary

judgment on the issue of liability under the Federal Odometer Act

was appropriate.

     B.  Jury Instructions

     The Langers' next issue on appeal is whether the jury was

properly instructed concerning the burden of proof and the measure

of damages in plaintiff's common-law fraud claim against them.  We

first consider the Langers' contentions regarding the burden of

proof instructions.

     Nonpublishable material omitted under Supreme Court Rule 23.

     2.  Measure of Damages

     The Langers next dispute the jury instruction given on the

measure of damages.  It stated, in pertinent part, that plaintiff

was to be compensated for "[a]ll amounts paid on the automobile." 

Plaintiff's jury instruction No. 36--A; see Illinois Pattern Jury

Instructions, Civil, No. 30.01 (3d ed. 1995) (modified).  The

Langers contend that the trial court erred by giving plaintiff's

instruction.  Moreover, the Langers assert that the proper measure

of damages is "the difference between the actual value of the

property sold and the value the property would have had if the

representations had been true" (Gerill Corp. v. Jack L. Hargrove

Builders, Inc., 128 Ill. 2d 179, 196 (1989)), and that the trial

court erred by refusing to give defendants Langers' jury

instruction No. 1.

     Jury instructions provide jurors with the correct principles

of law applicable to the evidence which has been submitted to them. 

Gaines v. Townsend, 244 Ill. App. 3d 569, 576 (1993).  The trial

court has the discretion to decide which issues have been raised by

the evidence and which instructions will be read to the jury. 

Gaines, 244 Ill. App. 3d at 576.  On review, we will grant a new

trial only where a party shows it has suffered serious prejudice to

its right to a fair trial due to the trial court's failure to read

a tendered jury instruction.  Gaines, 244 Ill. App. 3d at 576.

     Here, the Langers do not argue that they have been prejudiced

by the trial court's refusal of their tendered jury instruction No.

1.  Moreover, we have examined the record and find the trial court

did not abuse its discretion.  The court stated that the

rescissionary damages plaintiff sought under her fraud count

against the Langers were allowed by In re Estate of Neprozatis, 62

Ill. App. 3d 563, 570 (1978).  Further, the court stated that the

measure of damages, return of consideration, was accurately stated

by "all amounts paid on the automobile."  We agree, and,

accordingly, hold that the trial court did not err in refusing the

Langers' tendered jury instruction No. 1.

     C.  Joint and Several Liability

     In their next issue on appeal, the Langers contend that the

trial court erroneously entered judgment on each of the odometer

fraud verdicts returned against Robert and Diana individually. 

They assert that under the Federal Odometer Act liability is joint

and several.  They argue this means that the trial court should

have modified the verdict to reflect their joint and several

liability for $6,000, rather than the individual and separate

liability of $6,000 for each of them.

     Plaintiff responds by asserting that the trial court's

judgment was proper.  Plaintiff first analogizes the Langers'

prayer for relief to a situation where one codefendant is seeking

contribution from another.  Plaintiff contends that, under the

Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 et seq. (West

1994)), joint and several liability is not allowed for intentional

tortfeasors.  Plaintiff argues that the intent to defraud under the

federal statute renders the Langers' actions an intentional tort. 

Accordingly, plaintiff concludes that the Langers should not be

jointly and severally liable and that the court's judgment was

correct.

     Plaintiff also contends that the better reasoned of the

federal odometer fraud decisions do not allow defendants to be

jointly and severally liable.  Thus, according to plaintiff, the

trial court followed the correct reasoning in deciding to impose

individual liability on Robert and Diana for each Langer's

violation of the federal statute.  We agree with plaintiff on this

point.

     The parties, as well as our own research, have uncovered no

Illinois cases directly on point.  We therefore turn to the federal

cases which have considered the issue of whether liability under

the Federal Odometer Act is joint and several.  We find two

competing lines of authority:  the United States Court of Appeals

for the Fourth Circuit concluded that the plain language of the

statute imposed separate and individual liability upon defendants

in Ferris v. Haymore, 967 F.2d 946, 955-56 (4th Cir. 1992); but the

United States Court of Appeals for the Sixth Circuit held that the

statute permitted joint and several liability in Rice v. Gustavel,

891 F.2d 594, 596 (6th Cir. 1989).  We believe Ferris to be the

better reasoned analysis and, accordingly, follow the lead of the

fourth circuit in holding that the Langers are separately and

individually liable for the judgment entered against them under the

odometer fraud count.

     Ferris arose from a suit against two auto dealerships in the

chain of title of a car with a rolled-back odometer.  In its

analysis of whether to apply joint and several liability, the court

initially considered the plain language of section 1989(a), stating

that the statute "imposes treble damage liability on '[a]ny person

who, with intent to defraud, violates any requirement imposed under

this subchapter.' "  (Emphasis in original.)  Ferris, 967 F.2d at

955, quoting 15 U.S.C. §1989(a).  The court next criticized the

premises of the sixth circuit's holding in Rice:

     "That court did not even purport to rest its decision *** on

     the terms of the statute.  It simply stated that '[t]he fact

     that each such person shall be liable . . . does not

     necessarily preclude the conclusion that liability is to be

     joint and several, rather than separate and individual.' 

     [Rice,] 891 F.2d at 596 (emphasis added).  Then, without

     analysis, the court invoked the common law rule that

     '[l]iability for tortious conduct is normally joint and

     several' in holding that the federal odometer statute does not

     permit a plaintiff to recover the full measure of damages

     against each defendant.  [Rice, 891 F.2d] at 597.

          We do not believe that this holding can be reconciled

     with the plain terms of the odometer statute.  ***  The

     statute *** provides to victims of odometer fraud a cause of

     action against each violator of the statute [and] expressly

     provides that each violator will be liable for treble or

     statutory damages."  Ferris, 967 F.2d at 956.

The court further disagreed with the Rice court for importing the

common-law principle of joint and several liability into this

statutory section, noting that congress was well able to explicitly

provide for joint and several liability in various statutory

schemes when it wished.  Ferris, 967 F.2d at 956-57.

     We acknowledge that the case at bar differs from Ferris in the

important respect that there was not the successive fraudulent

transfer of title from Robert to Diana.  This does not, however,

change our analysis.  We note that Robert and Diana were each found

to be individually liable for a violation of the Federal Odometer

Act.  This, therefore, renders the instant case indistinguishable

from Ferris.  Therefore, Robert and Diana are separately and

individually liable for each one's violation of the Federal

Odometer Act.

     We also note that the Langers' arguments are untimely made. 

The Langers did not object to the verdict forms sent to the jury

listing Robert and Diana separately under the odometer fraud count. 

A timely objection interposed at that time would have alleviated

the Langers' present disappointment.  Accordingly, we hold that the

trial court did not err by imposing separate and individual

liability upon each of the Langers.

     D.  Remittitur of Fraud Damages to $2,000

     The Langers next argue that "Nonpublishable material omitted

under Supreme Court Rule 23." the trial court should have, in any

event, provided that the payment of the odometer fraud claim also

be in satisfaction of the common-law fraud claim.  "Nonpublishable

material omitted under Supreme Court Rule 23."

     Next, the Langers contend that the trial court should have

provided in its order that the satisfaction of the odometer fraud

judgment would also satisfy the common-law fraud judgment, because

to allow recovery on both judgments would be to allow plaintiff to

recover twice for a single harm.  We note, however, that the

Langers failed to raise this issue in their post-trial motion and

have thus waived the issue for review.  Doe v. Lutz, 281 Ill. App.

3d 630, 641 (1996).  Nevertheless, we consider the issue, as waiver

is a limitation on the parties and not the reviewing court. 

Committee for Educational Rights v. Edgar, 174 Ill. 2d 1, 11

(1996).

     The Langers' position is clearly correct.  Plaintiff is able

to cite no authority which would allow plaintiff to collect damages

for both common-law fraud and statutory odometer fraud to remedy a

single injury.  Indeed, the authority cited by plaintiff supports

the Langers' position.  Verdonck v. Scopes, 226 Ill. App. 3d 484,

491-92 (1992) (the plaintiff may not recover both statutory

odometer fraud and common-law fraud damages, but instead is limited

to the greater award of common-law fraud damages).  Accordingly,

pursuant to Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we modify

the trial court's judgment order of November 4, 1994, to reflect

that the satisfaction of the statutory odometer fraud judgments in

favor of plaintiff and against each Langer individually will

satisfy the common-law fraud judgments in favor of plaintiff and

against the Langers.

     E.  Indemnification to Laurel

     The Langers' next issue on appeal deals with the judgments

entered against them on Laurel's counterclaim.  They argue that the

thrust of Laurel's counterclaim is for indemnification and is

therefore barred under the statutory odometer fraud count.  We

agree.

     In accord with our holding above that the Federal Odometer Act

imposes separate and individual liability, we also hold that it

bars contribution or indemnification between codefendants.  See

Ferris, 967 F.2d at 957-58 (reversing district court's reduction of

award due to settlement of claims against codefendants); Mataya v.

Behm Motors Inc., 409 F. Supp. 65, 70 (E.D. Wis. 1976) ("[t]his

phenomenon of separate and individual liability precludes recovery

on a cross-claim based on indemnification or contribution").  Thus,

Laurel should have been precluded from pressing its counterclaim

against the Langers as it merely sought indemnification. 

Accordingly, we vacate the judgment in favor of Laurel and against

the Langers under count II of Laurel's counterclaim for statutory

odometer fraud.

     F.  Attorney Fees

     The Langers' final issue on appeal concerns the propriety of

the trial court's award of attorney fees to plaintiff.  The Langers

first contend that the trial court was without jurisdiction to

entertain plaintiff's fee petition.  The Langers assert that the

fee petition, filed on February 2, 1995, was filed more than 30

days after the final judgment, the date of which the Langers  claim

to have been November 4, 1994, the date the jury verdicts were

returned.

     The Langers' argument is patently frivolous and baseless in

the record.  The record plainly shows that the trial court ruled on

the Langers' post-trial motion on January 17, 1995.  The trial

court further ordered that "plaintiff shall have 21 days to file a

petition for attorney fees."  Plaintiff timely filed her petition

for attorney fees on February 2, 1995, 16 days after the entry of

final judgment.  We thus reject the Langers' first contention.

     The Langers next contend that the trial court should not have

granted plaintiff's request for attorney fees because plaintiff

failed to distinguish the time spent on each count of the

complaint.  We disagree.

     The trial court found that the hourly rates charged by

plaintiff's attorneys were reasonable and that the times spent on

the various tasks were appropriate.  Our review of the record

reveals no objection by the Langers either to the rates charged,

the times spent performing various tasks, or the necessity of any

of the specific tasks performed by plaintiff's attorneys. 

Moreover, the trial court found that all the claims were

inextricably intertwined, and the Langers did not dispute this

finding.  Accordingly, we find no error in the trial court's award. 

We point out, too, that the trial court adjusted the award to

reflect the time spent on the claim against the Langers by limiting

the award to fees incurred up until the summary judgment against

the Langers.

     "Nonpublishable material omitted under Supreme Court Rule 23.

     III.  Plaintiff's Cross-Appeal

     On cross-appeal, plaintiff objects to the trial court's

finding that the fee agreement was in violation of the Rules of

Professional Conduct and that it created a proprietary interest in

the litigation.  After careful review, however, we conclude that

plaintiff lacks standing to challenge the trial court's finding

that her counsel committed an ethical violation.  Northern Trust

Co. v. Brentwood North Nursing & Rehabilitation Center, Inc., 225

Ill. App. 3d 1039, 1041 (1992) ("plaintiff does not have standing

to raise arguments relating to the detriment suffered by its

attorneys from the order because [attorneys] did not file a notice

of appeal").  We note that this finding does not mean that

plaintiff may not challenge her counsel regarding the propriety of

the fee agreement in another forum.

IV.  Bank's Motion to Dismiss

     The Bank filed a motion to dismiss Laurel's appeal as it

related to the Bank which we ordered taken with the case.  The

arguments advanced in that motion were substantially similar to

those raised in its brief on appeal.  Accordingly, we choose to

deny the Bank's motion and resolve its arguments in the context of

this appeal.

                                CONCLUSION

     In summary, then, we affirm the judgment of the trial court as

regards Laurel in all respects.  We also affirm the trial court's

judgment as regards the Langers in all respects with the following

modifications:  satisfaction of the statutory odometer fraud

judgments against each Langer individually will satisfy the common-

law fraud judgments in favor of plaintiff and against the Langers,

and we vacate the judgment in favor of Laurel and against the

Langers under count II of Laurel's counterclaim for statutory

odometer fraud.  Thus, Laurel must pay $2,600 ($7,754.48 less

$5,154.48) in satisfaction of the judgment in favor of plaintiff

against Laurel; and Laurel must pay $9,483.93 in satisfaction of

the judgment for the Bank against Laurel.  The Bank, by stipulation

of all parties, has already satisfied the $5,154.48 judgment in

favor of plaintiff against the Bank.  Robert Langer must satisfy

the $6,000 judgment in favor of plaintiff and against him for

violation of the Federal Odometer Act; all remaining judgments

against him are vacated.  Diana Langer must satisfy the $6,000

judgment in favor of plaintiff and against her for violation of the

Federal Odometer Act; all remaining judgments against her are

vacated.  For the foregoing reason, the judgment of the circuit

court of Du Page County is affirmed as modified.

     Affirmed as modified.

     BOWMAN and RATHJE, JJ., concur.